**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, | ) ) ) | Case No.: _____ |
| Plaintiff, | ) ) ) | Judge: _____ |
| | ) ) | **JURY DEMAND** **ENDORSED HEREON** |
| v. | ) ) | |
| NATIONWIDE MORTGAGE BANKERS INC., | ) ) ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff NATIONWIDE MUTUAL INSURANCE COMPANY ("Nationwide") by and through its attorneys, brings this action for federal trademark infringement, unfair competition, dilution, cybersquatting, and violations of Ohio state law, and alleges against NATIONWIDE MORTGAGE BANKERS INC. ("Defendant") as follows:

**NATURE OF THE ACTION**

1. Nationwide is a long-time Ohio company, celebrating 100 years of service in 2026, well known for its insurance and other financial services provided under the famous NATIONWIDE mark and related trademarks. Defendant has sought to capitalize on the goodwill and sterling reputation associated with Nationwide and the NATIONWIDE Marks by using the NATIONWIDE MORTGAGE BANKERS name and mark in its mortgage business even after the United States Patent and Trademark Office found that Defendant's mark would create a likelihood of confusion with the NATIONWIDE Marks.

1

## THE PARTIES

2. Nationwide is a mutual insurance company organized under the laws of the State of Ohio, is domiciled in Ohio, and has its principal place of business at One Nationwide Plaza, Columbus, Ohio 43215.

3. Upon information and belief, Defendant is a corporation organized under the laws of the State of Delaware. Upon information and belief, Defendant has its principal place of business at 1305 Walt Whitman Road, Suite 100, Melville, New York 11747.

## JURISDICTION AND VENUE

4. This is an action for federal trademark infringement, federal false designation of origin, federal trademark dilution, federal cybersquatting, violation of Ohio's Deceptive Trade Practices Act, Ohio common law trademark infringement, Ohio common law unfair competition and Ohio common law dilution pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), 1125(c), 1125(d), The All Writs Act, 28 U.S.C. §1651(a) and Ohio Rev. Code § 4165.01 *et seq*. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Nationwide's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

5. This Court has personal jurisdiction over Defendant because it is licensed to do business in Ohio and has committed tortious actions in Ohio. Defendant sells and offers for sale the services described herein within this district, using the infringing marks and domain name. For example, Defendant offered its services through a Grandview Heights, Ohio location that used the sign below:

2



As set forth herein, Defendant has sufficient contacts with the State of Ohio for this Court to exercise personal jurisdiction over it.

6.      Venue is proper in the Southern District of Ohio under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this judicial district, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and/or Plaintiff is suffering harm in this district.

**GENERAL ALLEGATIONS**

**A.  Nationwide's Trademarks**

7.      Founded in 1926, Nationwide, combined with its affiliates, is one of the largest diversified insurance and financial services organizations in the world.  It has provided a full range of financial, insurance, and related services, such as public and private sector retirement plans,

annuities, and mutual funds; personal, commercial, farm, and life insurance; pet, motorcycle, and boat insurance; automobile financing; banking, lending, and mortgages.

8. Since at least 1955, Nationwide has been using, and continues to use, throughout the United States, the distinctive NATIONWIDE Marks (as defined below) to distinguish Nationwide's products and services from those promoted, distributed, offered, and sold by others.

9. Nationwide has used the NATIONWIDE Marks to promote its products and services extensively through virtually every available type of digital, broadcast, and print media, including, but not limited to, national, regional, and local print publications, billboards, signage, television, and the Internet.

10. Virtually all the services Nationwide offers are marketed in association with the NATIONWIDE Marks.

11. Nationwide's registered trademarks, common law trademarks, trade name, corporate names and use in a manner analogous to trademark and service mark use, each of which includes the term "NATIONWIDE" as all or part of the mark, are referred to collectively herein as the "NATIONWIDE Marks."

12. The following is a chart of registration numbers, filing dates, dates of first use, and goods and services information of some of the over 150 federally registered NATIONWIDE Marks:

| Mark | Reg. No. | Filing Date | First Use | Goods/Services |
|---|---|---|---|---|
| NATIONWIDE | 0854888 | 7/24/1967 | 9/5/1955 | Underwriting and sale of all lines of insurance, including fire, life, and casualty. |
| NATIONWIDE | 2017147 | 6/30/1995 | 9/5/1955 | Financial services, namely, the brokerage and distribution of mutual funds, money market funds, pension plans, IRA plans, annuities, and stocks and bonds. |

| Mark | Reg. No. | Filing Date | First Use | Goods/Services |
|---|---|---|---|---|
| NATIONWIDE FINANCIAL | 2788512 | 11/22/2002 | 11/28/1983 | Insurance and financial services, namely, life insurance underwriting; annuity underwriting; mutual fund investment; administration of pension plans, retirement accounts and retirement plans; asset management services. |
| NATIONWIDE IS ON YOUR SIDE | 1793850 | 10/29/1987 | 01/21/1974 | Insurance services; namely, underwriting life, health, annuity, property and casualty insurance; financial services; namely, the sale of mutual funds, money market funds, pension plans and IRA plans. |
| Sound trademark for "Nationwide is on your side" jingle | 5394152 | 11/22/2016 | 12/31/1976 | Financial services, namely, brokerage, underwriting, and administration of annuities, investment management of and distribution of annuities, underwriting and administration of surety bonds, guarantee services in the nature of providing financial guarantee and surety services, money market funds; banking services; financial administration of retirement plans and pension plans; financial asset management; financial planning and investment advisory services; insurance underwriting in the field of life insurance; mutual fund brokerage; trust services, namely, investment and trust company services; mortgage lending and brokerage service; financing and loan services; providing a website featuring information in the field of property and casualty insurance, life insurance, and financial planning. |

13. Printouts showing the status of the federal registrations for these NATIONWIDE Marks from the USPTO's TSDR system are attached to this Complaint as Exhibits 1-5.

14. Nationwide is the owner of U.S. Reg. No. 3328989 for NATIONWIDE for "providing banking services to others" with a date of first use of January 1, 2007 and U.S. Reg. No. 3328956 for NATIONWIDE (& Design) for "providing banking services to others" with a date of first use of November 1, 2006. Nationwide is also the owner of sound trademark rights in its famous jingle ("Nationwide is on your side"), including U.S. Reg. No. 4641345.

15. The registrations for the NATIONWIDE Marks are valid and subsisting and record title is in the name of Nationwide.

16. Nationwide's registrations are *prima facie* evidence of Nationwide's exclusive right to use the NATIONWIDE Marks in commerce in connection with the goods or services specified in the registrations under the provisions of 15 U.S.C. § 1057(b); and are constructive notice of Nationwide's claim of ownership under 15 U.S.C. § 1072.

17. Pursuant to 15 U.S.C. § 1065, Registration Nos. 0854888, 2017147, 2788512, 1793850, 5394152, 3328989, 3328956, and 4641345 are incontestable, and thus constitute conclusive evidence of Nationwide's exclusive rights pursuant to 15 U.S.C. §1115(b).

18. Because of Nationwide's substantially exclusive and continuous use of the NATIONWIDE Marks, the previously identified registrations, its promotion and advertising, and the high quality of Nationwide's products and services, Nationwide has acquired valid and enforceable trademark rights in the NATIONWIDE Marks, and the marks are associated with the extremely valuable goodwill of Nationwide.

19. As a result of Nationwide's extensive sales, revenues, and advertising expenditures associated with its NATIONWIDE Marks over many decades, and longstanding use and exposure

of these marks for its services, the NATIONWIDE Marks have become famous and exclusively associated with Nationwide, and Nationwide has acquired an eminent reputation therein.

20.     Nationwide has long used the NATIONWIDE Marks in association with services in addition to insurance.  Such services include, but are not limited to, those listed in the chart of trademark registrations above. Such use has served to further strengthen and expand the significant goodwill of the famous NATIONWIDE Marks.

21.     The fame and eminent reputation of the NATIONWIDE Marks pre-dates the use by Defendant of NATIONWIDE MORTGAGE BANKERS.

22.     Nationwide began providing insurance products and services and financial services under the NATIONWIDE mark in 1955. Nationwide has provided commercial real estate mortgage services under at least the NATIONWIDE mark since at least the 1970's. Nationwide has provided securities-backed lending services for consumers under at least the NATIONWIDE mark since 2008. Nationwide has provided individual retirement account services under at least the NATIONWIDE mark since 2008. Nationwide previously provided residential mortgage services under at least the NATIONWIDE mark since 1998.

23.     Since 2012, Nationwide's annual sales have exceeded $30 billion.  Since 2012, Nationwide's assets have exceeded $160 billion.  Since 2012, Nationwide has spent many millions of dollars on advertising, marketing and promotion of the NATIONWIDE Marks and its services. Nationwide has spent millions of dollars on digital advertising, social media and its websites in connection with its insurance and financial services products, with millions of visits to its nationwide.com website.   Nationwide had $68.5 billion in sales in 2024 and $73.2 billion in sales in 2025. Nationwide had $322.3 billion in assets in 2024.  Nationwide was ranked No. 72 on the Fortune 100 list of companies in 2024.

24. From 2003 to 2012, Nationwide held the naming rights for the second-highest men's professional golf tour in the United States. All of the Nationwide Tour golf events were nationally televised and reported on throughout the United States. Since 2014, Nationwide has been and continues to be the presenting sponsor of The Memorial Tournament, a nationally televised PGA Tour event held every year.

25. Nationwide was the title sponsor of the NASCAR Nationwide Series auto racing series from 2008 to 2014.

26. Nationwide's partnership with the NHL's Blue Jackets includes naming rights for the home of the Jackets—Nationwide Arena. Nationwide Arena has hosted, and continues to host, numerous sporting events, concerts and other events for the past 25 years.

27. Since 2014, Nationwide has been an official insurance sponsor of the National Football League ("NFL") and has partnerships with various NFL teams and current and former players.

28. Nationwide is also a sponsor of the Columbus Crew (Major League Soccer), National Women's Soccer League, the Columbus Clippers (MiLB), and the Columbus Fury (Major Volleyball League).

29. Nationwide also owns the nationwide.com domain name, with the associated website extensively using the NATIONWIDE Marks and providing information on Nationwide's goods and services, including life, home, and auto insurance.

30. Nationwide owns other domain names that include the NATIONWIDE Marks as a portion of the domain name.

31. As evidenced by the examples in the preceding paragraphs, Nationwide has spent extensive resources in advertising and promoting its NATIONWIDE Marks through a variety of

8

channels.  Over the past five years alone, Nationwide has invested many millions of dollars in advertising and other activities to promote its NATIONWIDE Marks and Nationwide's services offered under those marks.  The NATIONWIDE Marks have been seen by millions of consumers, accounting for hundreds of millions of impressions.

32.    As a result of Nationwide's extensive advertising and promotion, the NATIONWIDE Marks are famous, enjoy substantial goodwill, and are intellectual property rights of considerable value.

33.    Long before Defendant began its infringing activities, the NATIONWIDE Marks had been used for an extended period of time by Nationwide in interstate commerce to identify and distinguish Nationwide's high quality services.

34.    Nationwide has never assigned or licensed to Defendant any of the NATIONWIDE Marks.

35.    The NATIONWIDE Marks are symbols of Nationwide's quality, reputation, and goodwill and have never been abandoned.

36.    Nationwide has carefully monitored and policed the use of the NATIONWIDE Marks.

37.    As a result of Nationwide's efforts, members of the consuming public readily identify products and services bearing or sold under the NATIONWIDE Marks as being sponsored and approved by Nationwide.

**B.  Defendant's Infringing Activities.**

38.    On August 3, 2011, Defendant filed intent-to-use trademark application Serial No. 85/388903 ("the '903 trademark application") with the United States Patent and Trademark Office seeking to register "NATIONWIDE MORTGAGE BANKERS" as a mark in International Class

36 for "Mortgage banking services, namely, origination, acquisition, servicing, securitization and brokerage of mortgage loans; Mortgage brokerage; Residential mortgage loan procurement for others."

39. On December 7, 2011, the USPTO rejected Defendant's "NATIONWIDE MORTGAGE BANKERS" trademark application finding that such mark would create a likelihood of confusion with Nationwide's NATIONWIDE registered mark and with several other registered NATIONWIDE Marks.

40. Two of the Nationwide federal registrations the USPTO cited in its rejection of Defendant's "NATIONWIDE MORTGAGE BANKERS" trademark application were: (1) U.S. Reg. No. 3119130 for NATIONWIDE ADVANTAGE MORTGAGE for "mortgage lending and brokerage services" with a date of first use of April 1, 2002; and (2) U.S. Reg. No. 3199372 for NATIONWIDE ADANTAGE MORTGAGE COMPANY for "mortgage lending and mortgage brokerage services" with a date of first use of April 1, 2002.

41. The USPTO rejected the application on the further basis that "Applicant must disclaim the descriptive wording 'MORTGAGE BANKERS' apart from the mark as shown because the terms merely describe a characteristic, feature or purpose of the identified services."

42. On June 6, 2012, Defendant responded to the rejection by entering a disclaimer stating, "No claim is made to the exclusive right to use 'MORTGAGE BANKERS' apart from the mark as shown," but provided no evidence or arguments refuting the USPTO's position that Defendant's "NATIONWIDE MORTGAGE BANKERS" was confusingly similar to several NATIONWIDE Marks.

43. On July 26, 2012, the USPTO issued a final office action, repeating its rejection of Defendant's "NATIONWIDE MORTGAGE BANKERS" trademark application because such

10

mark would create a likelihood of confusion with Nationwide's NATIONWIDE registered mark and with several other registered NATIONWIDE Marks.

44.     Defendant never responded to the USPTO's refusal based on a likelihood of confusion with NATIONWIDE Marks. The final office action rejecting Defendant's intent-to-use "NATIONWIDE MORTGAGE BANKERS" trademark application was upheld and Defendant's application was abandoned on January 29, 2013.

### C. Defendant's infringement of the NATIONWIDE Marks is willful.

45.     Despite knowing of the NATIONWIDE Marks and that the USPTO already had found that the NATIONWIDE MORTGAGE BANKERS mark would create a likelihood of confusion with the NATIONWIDE Marks, Defendant nevertheless used the NATIONWIDE MORTGAGE BANKERS mark in its mortgage business.

46.     Upon information and belief, Defendant registered or caused to be registered the nationwidemortgagebankers.com domain name on or about November 2, 2012—three months *after* the USPTO's second and final rejection of Defendant's NATIONWIDE MORTGAGE BANKERS application.

47.     In addition to its nationwidemortgagebankers.com domain name, Defendant used the NATIONWIDE MORTGAGE BANKERS mark on the pages of its website, on its offices from which it offered its mortgage services and on its social media accounts, such as Instagram and Facebook on which it advertises its services.

48.     Defendant has infringed and continues to infringe on the NATIONWIDE Marks by using the terms NATIONWIDE, NATIONWIDE MORTGAGE BANKERS and NATIONWIDE MORTGAGE BANKERS, INC. in connection with its goods and services.

49.     Defendant's use of the NATIONWIDE mark uses the entirety of Nationwide's

11

famous NATIONWIDE mark.  Defendant's use of the NATIONWIDE MORTGAGE BANKERS mark uses the entirety of Nationwide's famous NATIONWIDE mark, while appending at the end the non-distinctive phrase "mortgage bankers," which Defendant had disclaimed from Defendant's '903 trademark application.  Defendant often places "mortgage bankers" on a different line than "NATIONWIDE" and in a smaller font than "NATIONWIDE," each of which further serves to highlight "NATIONWIDE" as distinct from "mortgage bankers."  The Defendant's website shows the image below for its Bronx, New York branch (https://nmbnow.com/bronx-ny/, last visited May 18, 2026):



50.      Defendant also uses a blue color with its NATIONWIDE MORTGAGE BANKERS mark similar to that used by Nationwide on Nationwide's website and with Nationwide's logos and trademarks.

51.      Defendant's conduct has caused actual confusion in the marketplace.

52.      For example, Nationwide received the following communication:

12

"I am writing to inform you of a company in Melville, New York by the name of Nationwide Mortgage Bankers who is impersonating the actual Nationwide company. I was looking to apply for a mortgage with Nationwide but instead came across this fake imposter.

I spoke with a gentleman named Rob Pudlowski who claimed to be representing the company of Nationwide. He mentioned he is a senior VP of sales, and his caller ID also said 'NATINOWIDE'. He said specifically we are a huge company and tried to get me to give me out my social security # on the phone. When I refused he said I would never get approved and told me good luck finding another lender. Very rude and unprofessional!

After some research I realized this was all fabricated and they are using the name NATIONWIDE MORTGAGE BANKERS to pose as the actual NATIONWIDE.

The branding is very similar if not almost identical to the actual Nationwide. I have to imagine this is very illegal and suggest that Nationwide's legal team address the matter accordingly.

It sickens me that this company is allowed to do business under the guise of the Nationwide brand."

53.     Another person wrote to Nationwide:

"I am writing about a company that I am not sure if you're aware, but is heavily impersonating the Nationwide brand. That company is called Nationwide Mortgage Bankers headquartered in Melville, NY.

I was trying to contact Nationwide for my policy and came across this company, they answer the phone as Nationwide and also claim to be the only Nationwide. The reps answer the phone as this is Nationwide, we're a big company I'm sure you've probably heard of us  This is blatantly fraudulent and deceptive.

This company is obviously a scam and I am sure is misleading consumers daily not to mention damaging your brand and image which you've spent substantial capital and time to build over many years.

I am saddened to see this group posing as the Nationwide brand and hope that you will take swift action to put a stop to their fraudulent and unethical activities. I also tried reaching out to the CEO of this company, Richard Steinberg, but was unable to get in touch with him. As soon as I asked if they were the real Nationwide he hung up

13

on me.

Please, as this company is doing a disservice to myself and others consumers by preying on us, put a stop to this with the appropriate action."

54. As a third example, a customer wrote to Nationwide:

"I am a policy holder of yours for many years. Today I want to bring to your attention I feel is a very important matter in which another company called Nationwide Mortgage Bankers is impersonating Nationwide, en masse.

I have received many calls from different representatives at this company – all of which say things along the lines of

As an existing Nationwide policy holder you must complete a refinance with Nationwide in order to maintain your current rate and coverage

We are Nationwide and proactively reach out to our customers to ensure their mortgage is covered under their existing premium

Upon further research I discovered this company is located in Melville, NY and has adopted very similar, almost identical, branding to Nationwide Insurance. I was contacted by . . . nmbnow.com which refers to themselves on the phone and various online outlets as Nationwide and Nationwide Mortgage.

In discussions with this company the representatives are very convincing and coercing and I almost went through with a mortgage refinance due to the claims made above by Nationwide Mortgage. This company, Nationwide Mortgage, is not only fraudulent, but dangerous, and I feel has used the Nationwide name and brand in bad faith to establish a significant foothold in the mortgage space and fraudulently seduce consumers into doing business under the Nationwide banner.

My wife, also a Nationwide customer, has received calls from this Nationwide Mortgage as well with the exact same script. I can only imagine how many customers of Nationwide have been tricked by this company and urge you to take immediate action to put an end to this company?s fraudulent use of the Nationwide name and brand to trick and trap consumers out of their hard earned dollar, especially during this time of national crisis."

55. Another person called Nationwide to complain about the misconduct of a specific

"Program Branch Manager." The caller "stated that the company is Nationwide Mortgage Banker Inc." Nationwide explained to the caller that Nationwide Mortgage Banker "was not affiliated with Nationwide Insurance."

56.     In yet another example, Nationwide noted, "Caller was trying to file a complaint against an Agent, turns out it was not our company it was Nationwide Mortgage Bankers …"

57.     Another person contacted Nationwide stating, she "is representing buyers and she is trying to reach agent and everyone. She has messaged the Lender, the house has been appraisal. The name of the company is Nationwide Mortgage Bankers Inc. She had the wrong company."

58.     In another instance, a Nationwide employee reported that "The caller put in an application for a home loan and was looking for assistance. The caller was trying to reach Nationwide Mortgage Bankers."

59.     Similarly, a Nationwide employee reported in another instance that "The caller was trying to reach someone at Nationwide Mortgage Bankers."

60.     Other Nationwide customers have pointed out Defendant's misconduct with respect to the NATIONWIDE Marks.

61.     For example, Nationwide received a message stating:

> "There is a company based in Melville, NY called Nationwide Mortgage Bankers and they send emails saying 'Nationwide Mortgage Bankers- On Yourside'. I believe they are infringing on your Registered Trademark and wanted to bring it to someone's attention."

62.     Nationwide reached out to Defendant to point out that Defendant's NATIONWIDE MORTGAGE BANKERS mark was infringing the NATIONWIDE Marks. Defendant represented that it would change its branding from the NATIONWIDE MORTGAGE BANKERS mark to the NMBNow mark.

63.     Defendant's representation led Nationwide to believe that Defendant would change

15

its branding to the NMBNow mark, but Defendant has failed to do so.

64.     The parties worked on a settlement agreement but ultimately did not reach resolution.

65.     Defendant has continued to violate Nationwide's trademark and related rights in the NATIONWIDE Marks. Although Defendant now uses the NMBNow mark in some places, it has maintained certain uses of the NATIONWIDE MORTGAGE BANKERS mark. Defendant continues to reference the NATIONWIDE MORTGAGE BANKERS mark on its website.

66.     In 2026, Nationwide saw for the first time on Defendant's Facebook page, images of wrapped vehicles bearing infringing marks:





67.     Defendant also has continued to use the infringing NATIONWIDE and NATIONWIDE MORTGAGE BANKERS marks on an additional website at nmbbranchnow.com (last visited May 18, 2026):



68.     Defendant's failure to completely rebrand to the NMBNow mark has left Nationwide with no choice but to file suit to protect its valuable intellectual property by seeking an injunction to prevent further infringement of its trademark and related rights in the NATIONWIDE Marks.

17

69.     Although Defendant moved its nationwidemortgagebankers.com website to nmbnow.com, Defendant redirects web traffic from nationwidemortgagebankers.com to nmbnow.com, thereby continuing to profit from its improper use of the NATIONWIDE Marks.

70.     Defendant has not agreed to cease its infringement and other violations of Nationwide's rights. Defendant has engaged in its misconduct despite knowing that its NATIONWIDE MORTGAGE BANKERS mark creates a likelihood of confusion with the NATIONWIDE Marks.

71.     Upon information and belief, Defendant is actively using, promoting and otherwise advertising, distributing, selling, and/or offering its services for sale with the knowledge and intent that such services will be mistaken for the genuine high-quality services offered by Nationwide despite Defendant's knowledge that it is without authority to use the NATIONWIDE Marks.

72.     The misappropriation of the NATIONWIDE Marks is a proximate cause of harm to Nationwide.

73.     Defendant is engaging in the above-described infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Nationwide's rights for the purpose of trading on Nationwide's goodwill and reputation.

74.     Nationwide is suffering irreparable and indivisible injury and has suffered substantial damages because of Defendant's unauthorized and wrongful use of the NATIONWIDE Marks.  If Defendant's intentional infringing, dilutive, cybersquatting, deceptive and unfairly competitive activities are not permanently enjoined by this Court, Nationwide and the consuming public will continue to be harmed.

### COUNT I – TRADEMARK INFRINGEMENT
### PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

75.     Nationwide repeats the allegations in paragraphs 1-74 above as if fully set forth

herein.

76.     This is an action for trademark infringement against Defendant based on its use of counterfeits, copies, and/or colorable imitations of the federally registered NATIONWIDE Marks in commerce in connection with the promotion, advertisement, distribution, sale and/or offering for sale of its products and services.

77.     Defendant's infringing activities are likely to cause and are actually causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's products and services.

78.     Defendant's unlawful actions have caused and are continuing to cause unquantifiable damage and irreparable harm to Nationwide and are unjustly enriching Defendant at Nationwide's expense.

79.     Defendant's actions constitute infringement of the federally registered NATIONWIDE Marks in violation of Nationwide's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

80.     Nationwide has no adequate remedy at law, and has sustained irreparable injury and damages caused by Defendant's conduct.  Absent entry of an injunction by this Court, Nationwide will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

**COUNT II – UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

81.     Nationwide repeats the allegations in paragraphs 1-80 above as if fully set forth herein.

82.     This is an action for false designation of origin against Defendant based on its use of counterfeits, copies, and/or colorable imitations of the NATIONWIDE Marks in commerce in

connection with the promotion, advertisement, distribution, sale and/or offering for sale of its products and services.

83.     Defendant's infringing activities are likely to cause and are actually causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin, sponsorship or approval of Defendant's products and services.

84.     Defendant's unlawful actions have caused and are continuing to cause unquantifiable damage and irreparable harm to Nationwide and are unjustly enriching Defendant at Nationwide's expense.

85.     Defendant's actions constitute false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

86.     Nationwide has no adequate remedy at law, and has sustained irreparable injury and damages caused by Defendant's conduct.  Absent entry of an injunction by this Court, Nationwide will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

**COUNT III – TRADEMARK DILUTION
PURSUANT TO § 43(c) OF THE LANHAM ACT (15 U.S.C. § 1125(c))**

87.     Nationwide repeats the allegations in paragraphs 1-86 above as if fully set forth herein.

88.     Nationwide is the owner of a famous mark that is distinctive, and after it became famous Defendant commenced use of the NATIONWIDE MORTGAGE BANKERS mark in commerce that is likely to cause dilution by blurring and/or dilution by tarnishment of at least one of the NATIONWIDE Marks, namely, the NATIONWIDE mark.

89.     The NATIONWIDE mark is distinctive and famous, has been used in commerce and widely advertised throughout the United States, and is instantly recognizable by consumers as

20

a symbol of Nationwide and its services.

90.     Defendant's actions, as described above, in using and adopting similar marks, are likely to dilute the distinctive quality of Nationwide's famous NATIONWIDE mark by lessening the capacity of the NATIONWIDE mark to designate and distinguish the products and services offered by Nationwide in association with such mark.

91.     Defendant's actions, as described above, in using and adopting similar marks, are likely to injure the business reputation of Nationwide because any wrongful acts or misconduct or any defect in Defendant's actions are likely to be attributed to Nationwide, thereby injuring Nationwide's reputation.

92.     With knowledge of Nationwide's long, exclusive, and continuous use of the NATIONWIDE mark, Defendant has, without authorization from Nationwide, acted willfully and traded on and continued to trade on the goodwill associated with Nationwide's NATIONWIDE mark.

93.     Defendant's actions constitute trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

94.     Nationwide has no adequate remedy at law, and has sustained irreparable injury and damages caused by Defendant's conduct.  Absent entry of an injunction by this Court, Nationwide will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

**COUNT IV – CYBERSQUATTING**
**PURSUANT TO § 43(d) OF THE LANHAM ACT (15 U.S.C. § 1125(d))**

95.     Nationwide repeats the allegations in paragraphs 1-94 above as if fully set forth herein.

96.     At all times relevant hereto, Nationwide has been and still is the owner of all right,

title, and interest in and to the NATIONWIDE Marks.

97. Defendant has acted with the bad faith intent to profit from the NATIONWIDE Marks and the goodwill associated with the NATIONWIDE Marks by registering and using the nationwidemortgagebankers.com domain name.

98. The NATIONWIDE Marks were distinctive and famous at the time Defendant registered the nationwidemortgagebankers.com domain name.

99. Defendant has no intellectual property rights in or to the NATIONWIDE Marks.

100. The nationwidemortgagebankers.com domain name is identical to or confusingly similar to the NATIONWIDE Marks. The nationwidemortgagebankers.com domain name is dilutive of at least one of the NATIONWIDE Marks, namely, the NATIONWIDE mark.

101. Defendant's conduct was done with knowledge and constitutes a willful violation of Nationwide's rights in the NATIONWIDE Marks.  At a minimum, Defendant's conduct constitutes reckless disregard for and willful blindness to Nationwide's rights.

102. Defendant's actions constitute cybersquatting in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

103. Nationwide has no adequate remedy at law, and has sustained irreparable injury and damages caused by Defendant's conduct.  Absent entry of an injunction by this Court, Nationwide will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

**COUNT V – VIOLATION OF OHIO'S DECEPTIVE TRADE PRACTICES ACT
(OHIO REVISED CODE § 4165.01 *ET SEQ.*)**

104. Nationwide repeats the allegations in paragraphs 1-103 above as if fully set forth herein.

105. Defendant is engaged in deceptive trade practices and violated Ohio's Deceptive

22

Trade Practices Act as set forth in Ohio Revised Code §§ 4165.01 through 4165.04. Among other things, Defendant is causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendant's goods or services and as to affiliation, connection, or association with, or certification by, Nationwide.

106. Defendant willfully engaged in these deceptive trade practices knowing them to be deceptive.

107. Nationwide has no adequate remedy at law, and has sustained irreparable injury and damages caused by Defendant's conduct. Absent entry of an injunction by this Court, Nationwide will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

### COUNT VI – OHIO COMMON LAW TRADEMARK INFRINGEMENT

108. Nationwide repeats the allegations in paragraphs 1-107 above as if fully set forth herein.

109. This is an action for common law trademark infringement against Defendant based on its promotion, advertisement, offering for sale, and sale of services in association with marks infringing the NATIONWIDE Marks.

110. Specifically, Defendant is promoting and otherwise advertising, distributing, offering for sale and selling services in association with the NATIONWIDE MORTGAGE BANKERS mark.

111. Defendant's infringing activities are likely to cause and are actually causing confusion, mistake, and deception among members of the general consuming public as to the origin and quality of Defendant's services.

112. Defendant's actions constitute trademark infringement under Ohio common law.

113. Nationwide has no adequate remedy at law, and has sustained irreparable injury and damages caused by Defendant's conduct. Absent entry of an injunction by this Court, Nationwide will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT VII – OHIO COMMON LAW UNFAIR COMPETITION

114. Nationwide repeats the allegations in paragraphs 1-113 above as if fully set forth herein.

115. This is an action against Defendant based on its promotion, advertisement, distribution, sale and/or offer for sale of products and services in association with marks that are virtually identical to the NATIONWIDE Marks in violation of Ohio's common law of unfair competition.

116. Specifically, Defendant is promoting and otherwise advertising, selling and offering for sale services in association with marks infringing the NATIONWIDE Marks. Defendant is also using infringements of the NATIONWIDE Marks to unfairly compete with Nationwide for space in search engines and social media results and/or visibility on the World Wide Web.

117. Defendant's infringing activities are likely to cause and are actually causing confusion, mistake, and deception among members of the general consuming public as to the origin and quality of Defendant's services. Defendant's use of the NATIONWIDE MORTGAGE BANKERS mark in connection with Defendant's services is likely to induce customers to mistakenly believe that Defendant's products and services are affiliated, sponsored, sold, approved by or connected with Nationwide.

118. Defendant's actions constitute unfair competition under Ohio common law.

119.    Nationwide has no adequate remedy at law, and has sustained irreparable injury and damages caused by Defendant's conduct. Absent entry of an injunction by this Court, Nationwide will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

### COUNT VIII – OHIO COMMON LAW DILUTION

120.    Nationwide repeats the allegations in paragraphs 1-119 above as if fully set forth herein.

121.    Defendant's use of the NATIONWIDE MORTGAGE BANKERS mark and similar marks long after Nationwide's use of the NATIONWIDE Marks for decades operates to whittle away and disperse the value of the NATIONWIDE Marks, including the NATIONWIDE mark, in the minds of the public.

122.    The NATIONWIDE Marks, including the NATIONWIDE mark, are famous, strong and distinctive to the consuming public.

123.    Defendant's use of the NATIONWIDE MORTGAGE BANKERS mark dilutes the strength of the NATIONWIDE mark by blurring and diminishing the goodwill and consumers' positive associations that Nationwide has developed over many decades of use.

124.    Nationwide has no adequate remedy at law, and has sustained irreparable injury and damages caused by Defendant's conduct.  Absent entry of an injunction by this Court, Nationwide will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

### PRAYER FOR RELIEF

WHEREFORE, Nationwide respectfully requests judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendant as follows:

a. Entry of a permanent injunction pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining and requiring Defendant and its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendant, or in concert or participation with Defendant, be enjoined permanently, from directly or indirectly:

    i. using the NATIONWIDE, NATIONWIDE MORTGAGE BANKERS or NATIONWIDE MORTGAGE BANKERS INC. marks, or any other copy, reproduction, or colorable imitation, or confusingly similar version of the same, on or in connection with selling or providing insurance, mortgage, financial, or other consulting services or otherwise competing with Nationwide's products and services;

    ii. using any trademark, trade dress, name, logo, design, color, or source designation of any kind on or in connection with Defendant's products or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to Nationwide's name or the NATIONWIDE Marks;

    iii. using any trademark, trade dress, name, logo, design, color, or source designation of any kind on or in connection with Defendant's products or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such products or services are produced or provided by Nationwide, or is sponsored or authorized by Nationwide, or is in any way connected or related to Nationwide;

    iv. using any trademark, trade dress, name, logo, design, color or source designation of any kind on or in connection with Defendant's products or

26

services that dilutes or is likely to dilute the distinctiveness of Nationwide's name or the NATIONWIDE mark;

    v.    passing off, palming off, or assisting in passing off or palming off, Defendant's products or services as those of Nationwide, or otherwise continuing any and all acts of unfair competition as alleged in the Complaint.

b. Entry of a permanent injunction pursuant to 15 U.S.C. § 1116 and Federal Rules of Civil Procedure 65, enjoining and requiring Defendant and all third parties with actual notice of the injunction from participating in, including providing financial services, technical services or other support to, Defendant in connection with the sale and distribution of products and services bearing Defendant's NATIONWIDE, NATIONWIDE MORTGAGE BANKERS or NATIONWIDE MORTGAGE BANKERS INC. marks or any marks similar to the NATIONWIDE Marks.

c. Entry of an order that, upon Nationwide's request, those acting in concert or participation with Defendant who have notice of the injunction, as service providers cease hosting, facilitating access to, or providing any supporting services to any and all domain names, including but not limited to, nationwidemortgagebankers.com, nmbnow.com, nmbbranchnow.com and websites through which Defendant engages in the promotion, offering for sale and/or sale of products or services bearing and/or using infringements of the NATIONWIDE Marks.

d. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Nationwide to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are used by Defendant in connection with Defendant's promotion,

offering for sale, and/or sale of products or services bearing and/or using infringements of the NATIONWIDE Marks.

e.  Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that upon Nationwide's request, the top level domain (TLD) Registry for nationwidemortgagebankers.com, and any other domains used by Defendant, or its administrators, including backend registry operators or administrators, place the nationwidemortgagebankers.com domain name on Registry Hold status for the remainder of the registration period for such domain name, thus removing it from the TLD zone files which link the nationwidemortgagebankers.com domain name, and any other domain names being used and/or controlled by Defendant to engage in the business of marketing, offering to sell, and/or selling products or services bearing and/or using infringements of the NATIONWIDE Marks, to the IP addresses where the associated websites are hosted.

f.  Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Nationwide's election, transferring the nationwidemortgagebankers.com domain name and any other domain names used by Defendant to engage in its infringement of the NATIONWIDE Marks to Nationwide's control so they may no longer be used for illegal purposes.

g.  Entry of an order requiring Defendant, its agent(s) or assign(s), to assign all right, title, and interest to the nationwidemortgagebankers.com domain name to Nationwide and, if within five (5) days of entry of such order Defendant fails to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil

Procedure 70(a).

h. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority, requiring Defendant to deliver up for impoundment and for destruction all products, promotional materials, signs, packages, marketing materials, proposals, forms, spec or warranty information or other materials in the possession, custody or under the control of Defendant that are found to adopt, infringe, or dilute the NATIONWIDE Marks or that otherwise unfairly compete with Nationwide's products or services.

i. Entry of an order pursuant to 15 U.S.C. § 1116(a) requiring Defendant to file with the Court and serve on Nationwide, within thirty (30) days after service on Defendant of such injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

j. Entry of an order requiring Defendant to account to and pay Nationwide for all profits and damages resulting from Defendant's cybersquatting activities and that the award be trebled, as provided for under 15 U.S.C. § 1117, or, at Nationwide's election with respect to Count IV - Cybersquatting, that Nationwide be awarded statutory damages from Defendant in the amount of one hundred thousand dollars ($100,000) per cybersquatted domain name used as provided by 15 U.S.C. § 1117(d) of the Lanham Act.

k. Entry of an order compelling Defendant to account to Nationwide for any and all revenue derived by Defendant from the sale or distribution of infringing products or services as described in the Complaint.

l. Awarding Nationwide all damages caused by the acts forming the basis of the

Complaint.

m.  Ordering that, based on Defendant's willful and intentional conduct, the damages award be trebled and the award of Defendant's revenues be enhanced as provided by 15 U.S.C. § 1117.

n.  Requiring Defendant to pay to Nationwide the costs of this action and its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

o.  Awarding Nationwide prejudgment interest on the judgment amount.

p.  Awarding Nationwide such other and further relief as the Court may deem just.

Respectfully submitted,


/s/ Timothy R. Bricker
Timothy R. Bricker (0061872)(Trial Attorney)
Gregory R. Dick (0097816)
CARPENTER LIPPS LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone:  (614) 365-4100
Facsimile:   (614) 365-9145
bricker@carpenterlipps.com
dick@carpenterlipps.com

*Counsel for Plaintiff*
*Nationwide Mutual Insurance Company*


**OF COUNSEL:**
Patrick L. Patras (*pro hac vice admission pending*)
CARPENTER LIPPS LLP
180 N. LaSalle Street
Suite 2880
Chicago, Illinois 60601
Telephone:  (312) 777-4300
patras@carpenterlipps.com

*Counsel for Plaintiff*
*Nationwide Mutual Insurance Company*

## JURY DEMAND

Plaintiff Nationwide Mutual Insurance Company hereby specifically demands that its claims be tried to a jury composed of the maximum number of jurors allowed by law.

/s/ Timothy R. Bricker
Timothy R. Bricker

*One of the Attorneys for Plaintiff
Nationwide Mutual Insurance Company*